UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED 08 JUN -5 AM 11: 05 BY: DEPUTY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | Magistrate Case No. '08 MJ 1767 |
| Plaintiff, | ) | |
| | ) | COMPLAINT FOR VIOLATION OF: |
| v. | ) | |
| | ) | Title 8 U.S.C., Sec. 1324 (a)(2)(B)(iii) |
| **1) Soledad MARTINEZ-Sandoval,** | ) | Bringing in Illegal Aliens Without |
| **2) Ernest GUERRERO-Rivera** | ) | Presentation |
| | ) | |
| Defendant(s) | ) | |

The undersigned complainant, being duly sworn, states:

On or about **June 3, 2008,** within the Southern District of California, defendants **Soledad MARTINEZ-Sandoval and Ernest GUERRERO-Rivera**, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Jose Guadalupe GONZAGA-Ceja** , had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 5th DAY OF **JUNE, 2008**

Leo S. Papas
UNITED STATES MAGISTRATE JUDGE

**CONTINUATION OF COMPLAINT:**
**Soledad MARTINEZ-Sandoval, Ernest GUERRERO-Rivera**

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Jose Guadalupe GONZAGA-Ceja** is a citizen of a country other than the United States; that said alien has admitted that he is deportable; that his testimony is material; that it is impracticable to secure his attendance at the trial by subpoena; and he is a material witness in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On Tuesday, June 3, 2008. Border Patrol Agent M. Monroy was assigned as the West Scope operator in the Imperial Beach area of responsibility. The West Scope operator's area of observation covers from the International Boundary Line in an area known as Goat Canyon to the beach at Border Field State Park, which is approximately 4.5 to 5 miles west of the port of entry at San Ysidro, California. Alien smuggling through the use of horses has been a common problem in this area of operation. Due to the proximity of the stables to the United States/Mexico International Border, smugglers are using these stables to further the illegal entry of aliens into the United States via horseback riding.

At approximately 5PM, Agent Monroy observed through her binoculars two horses with riders traveling westbound. The first horse had two riders, a male and female, the second horse had a single male rider wearing blue jeans and white long sleeve shirt. It appeared that the three riders where together as a group as they were only a few feet away from each other. When the two horses reached an area known as Research Trailer road north of the border, they turned south towards an area known as Goat Canyon.

Agent Monroy looked away to work other possible illegal activity in the area. A few minutes later, however, she observed the horse with two riders by the hitching post area without the other horse and rider. She looked further south and saw the single rider heading further south in the creek bed area. The single rider was on a riding trail that leads behind a hill to an area known as "The Bunkers Hill" and was out of view. Agent Monroy looked away again to work other traffic in the area.

Agent Monroy subsequently observed the two riders head south on the same trail as the single rider towards the west side of "Bunkers Hill". A few minutes later, an individual who initially appeared to be the single rider came back north out of the brush and headed toward the couple on the horse. They all stopped briefly a few feet from each other and conversed for a couple of minutes. Again, Agent Monroy thought they were all together. She again looked away to work other illegal activity.

When Agent Monroy looked back at the horse riders, however, she observed that the individual who appeared to be the single rider was having trouble on the horse. The horse was running around in circles and the rider did not appear to have control of the horse. Agent Monroy then realized that the rider was not the same person who she saw ride south to the Bunkers Hill area. In fact, this rider was now wearing a short sleeve checkered shirt. Agents have learned that smugglers use a practice know was "swapping out" riders in which an individual rides a horse to the border and, in a concealed area, switches with the smuggled alien so it looks like the same rider is on the horse.

Agent Monroy observed that the couple on the other horse were trying to call out to the single rider. A few seconds later Agent Monroy saw the horse on a fast run south without the single rider on him. Agent Monroy advised over the radio to Border Patrol that a rider was down and the horse was running south. The couple on the horse also headed toward the direction of the single rider, who was down in the brush.

Border Patrol Agent E. Leyva responded to the area. When the couple on the horse saw the Border Patrol vehicle approach, they turned their horse around and headed south in the opposite direction.

**CONTINUATION OF COMPLAINT:**
**Soledad MARTINEZ-Sandoval, Ernest GUERRERO-Rivera**

When Agent Leyva approached the downed rider, he identified himself as a Border Patrol Agent, and in the English language, asked him how he was doing and that if he was okay. The subject was confused and did not appear to understand Agent Leyva's question. Agent Leyva then asked the subject in the Spanish language as to what had happened. The individual, material witness **Jose Guadalupe GONZAGA-Ceja,** stated that he had fallen from a horse. When Agent Leyva asked him if he knew how to ride a horse, **GONZAGA** replied "No". Suspecting that **GONZAGA** may be in the country illegally, Agent Leyva queried him as to his immigration status. **GONZAGA** admitted that he was a citizen of Mexico illegally present in the United States. When Agent Leyva asked **GONZAGA** as to where he had crossed, **GONZAGA** replied that he had just crossed through the border fence and that he was being smuggled on horseback. **GONZAGA** stated that an unidentified subject had taken the horse to the international border fence where they both switched off. The unidentified subject was not located. Agent Leyva then took **GONZAGA** into custody.

Agent Leyva was then directed to the location of the horse with couple. Due to the fact that Agent Leyva had just arrested **GONZAGA** on horseback and he had knowledge that this area is increasingly being used for alien smuggling on horseback, Agent Leyva proceeded to make contact with the other two subjects. In their marked Border Patrol vehicles, Agents Leyva and L. Gonzalez approached the subjects and hand motioned to the couple on the horse to stop. Agents Leyva and Gonzalez identified themselves as Border Patrol Agents and questioned both subjects as to their citizenship and nationality. The male subject later identified as defendant **Ernest GUERRERO-Rivera** stated that he is a United States citizen and produced a California driver license bearing his name and photograph and a tattered United States birth certificate. The female subject later identified as defendant **Soledad MARTINEZ-Jimenez** stated that she is a United States citizen and produced a California identification card bearing the name given and a photograph in her likeness.

The Agents questioned the subjects regarding any knowledge of **GONZAGA's** smuggling attempt. Both subjects denied knowing **GONZAGA**; however, both stated that **GONZAGA** was attempting to attach himself to them. Agent Gonzalez then asked both **GUERRERO** and **MARTINEZ** if they had any prior immigration or criminal histories. **GUERRERO** replied "no". A subsequent records check, however, revealed that **GUERRERO** has an extensive criminal history. **MARTINEZ** immediately admitted she had just served time for aiding and abetting of illegal aliens. At this point, Agent Gonzalez asked the couple to dismount and both were separated for further questioning.

When **GUERRERO** was asked why he didn't stay to help the subject who fell off the horse, **GUERRERO** replied that he told him "You're on your own". **GUERRERO** appeared nervous and continually interrupted, yawned, looked away, and changed the subject by asking Agent Leyva questions regarding his job.

Once separated, **MARTINEZ** became very nervous and agitated and started telling Agent Gonzalez that "She was in violation of her parole just for speaking with him". She pleaded to Agent Gonzalez not to call her parole officer. This behavior prompted Agent Gonzalez to further question **MARTINEZ**. Agent Gonzalez then asked **MARTINEZ** how she knew **GUERRERO**. **MARTINEZ** claimed she had just met **GUERRERO** that Sunday through a friend of a friend. **MARTINEZ** also stated that **GUERRERO** was going to teach her how to ride a horse.

Based on the defendants' demeanors and inconsistancies in their stories and agents' observations and the fact that alien smuggling on horseback is becoming common in this area Agent Leyva and Gonzalez believed that the two were involved in alien smuggling. At approximately 7PM Agent Leyva placed the defendant's in custody and transported them to the Imperial Beach Border Patrol Station for further investigation.

**STATEMENT OF DEFENDANT SOLEDAD MARTINEZ-SANDOVAL:**

The defendant was advised of her rights as per the Miranda Warning. The defendant understood her rights and agreed to be interviewed without representation.

MARTINEZ stated that she was born in Fresno, California. MARTINEZ stated that she is a citizen and national of the United States. MARTINEZ stated that she has been arrested on two previous events for alien smuggling. On July 7, 2007, MARTINEZ was arrested for Alien Smuggling aiding and abetting. MARTINEZ stated that she was working as a load driver on that event. On February 11, 2005, MARTINEZ was also arrested for alien smuggling. MARTINEZ was the driver/smuggler of her aunt who presented an altered Mexican Passport with an altered US MR Visa. MARTINEZ further admitted to being involved in criminal and gang activity in the past.

At the station MARTINEZ admitted that the cell phone she was carrying belonged to her. MARTINEZ was questioned about a number on her phone that was under the name "Chela". "Chela" is a known smuggler in the Imperial Beach area of operations who uses horses to smuggle people into the United States. MARTINEZ stated that a friend named Arturo introduced her to "Chela" a few days ago. .

On June 3, 2008, MARTINEZ stated that GUERRERO-Rivera, Ernest picked her up at her cousin's house where she had been staying. MARTINEZ stated that GUERRERO is a mutual friend of "Chela" and herself. MARTINEZ stated that she had met GUERRERO at Plaza Americas. GUERRERO took MARTINEZ to a ranch located on Hollister Street where she stated that they fed the horses and got them ready to ride them. MARTINEZ stated that "Chela" was not there and that the last time she saw her was on Sunday, June 1, 2008.

MARTINEZ and GUERRERO mounted one horse and an unknown man mounted another horse. When questioned about the other rider MARTINEZ stated that she did not know who he was. MARTINEZ stated that while GUERRERO was showing her the area she lost sight of the other individual riding the other horse. MARTINEZ stated that after a few minutes the individual on the other horse re-appeared. When questioned about the other rider MARTINEZ stated that she saw him fall off the horse but her and GUERERRO kept going.

**STATEMENT OF MATERIAL WITNESS JOSE GUADALUPE GONZAGA-CEJO:**

Material witness GONZAGA admitted to being a citizen and national of Mexico, illegally present in the United States, without any proper immigration documents that would allow him to enter or remain in the United States legally. GONZAGA stated he was born in Guadalajara Jalisco, Mexico and that he currently resides there.

GONZAGA stated that he arrived in Tijuana, Mexico approximately one week ago. Shortly after arriving in Tijuana, GONZAGA was approached by an individual known as "El Verde". "El Verde" told GONZAGA that he could smuggle him into the United States by horseback. "El Verde" assured GONZAGA that this method was safe and that they would not be detected by the Border Patrol. GONZAGA made arrangements



**CONTINUATION OF COMPLAINT:**
**Soledad MARTINEZ-Sandoval, Ernest GUERRERO-Rivera**

with "El Verde" to be smuggled to San Diego, California for $2,500.00 USD. GONZAGA stated that his brother living in San Diego, California, was going to pay the smuggling fees. GONZAGA was told to wait in the Hotel Carillo and they would pick him up at a later date. An unknown individual visited GONZAGA at the Hotel Carillo and provided him with instruction on how to mount and ride a horse. GONZAGA stated that he waited in the Hotel Carillo for approximately one week.

On June 3, 2008, at approximately 2:00 PM "El Verde" picked up GONZAGA at the Hotel Carillo in a green Dodge Intrepid and drove him to the United States / Mexico International Boundary Fence. "El Verde" gave GONZAGA a clean button-up shirt and boots, so that he would resemble the local horse riders that frequent the area. "El Verde" explained to GONZAGA that two horses were going to approach the fence and GONZAGA was going to switch places with an individual riding on one of the horses. "El Verde" explained to GONZAGA that he would follow the other horse riders and they would show him which way to go. "El Verde" further warned him not to say anything if he was caught by the United States Border Patrol.

On June 3, 2008, at approximately 5:00 PM, "El Verde" received a call on his cellular phone telling him to get ready because the horses were on their way. GONZAGA stated that he saw two horses approaching the United States / Mexico International Boundary Fence. Riding on one of the horses were two individuals later identified as MARTINEZ-Sandoval, Soledad and GUERRERO-Rivera, Ernest. Riding on the other horse was an unknown individual who dismounted the horse and jumped into Tijuana. The unknown individual gave GONZAGA his hat and told him to mount the vacant horse.

GONZAGA stated that defendants MARTINEZ and GUERRERO waited ahead while he mounted his horse. Once GONZAGA had mounted the horse, defendant GUERRERO gave him a hand gesture indicating that he should follow them. GONZAGA stated that after a few minutes he lost control of the horse due to his lack of training and experience. GONZAGA stated that he fell to the ground and MARTINEZ and GUERRERO were going to help him remount the horse until they saw Border Patrol Agents approaching. GUERRERO and MARTINEZ both told GONZAGA not to reveal anything and to claim he didn't know them if he was apprehended by Border Patrol Agents. GONZAGA stated that he fears for his life if "El Verde" or the other individuals find out he revealed information.

When presented with two photo line ups, GONZAGA positively identified defendants **Soledad MARTINEZ-Jimenez** and **Ernest GUERRERO-Rivera**, as the individuals on the other horse who were guiding him into the United States.